J-S14044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAI JAUNA LASHAE JONES | : | |
| | : | |
| Appellant | : | No. 1250 WDA 2021 |

Appeal from the Judgment of Sentence Entered August 30, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004212-2020

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED: MAY 23, 2022**

Tai Jauna Lashae Jones (Jones) appeals from the judgment of sentence imposed by the Court of Common Pleas of Allegheny County (trial court) following her non-jury convictions for robbery, receiving stolen property, defiant trespass and harassment.[1]  On appeal, she challenges the admission of several text messages from the victim's cell phone, arguing that the Commonwealth failed to properly authenticate the text messages because it could not prove that she sent them.  After review, we affirm.

At the non-jury trial, Dazzae Perkins (Perkins) testified that four women attacked her from behind while she was leaving her home for work on April 7,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(v), 3925(a), 3503(b)(1)(i) and 2709(a)(1).

2020. Perkins identified Jones as one of the attackers and stated that Jones hit her and took her purse with her iPhone in it. Perkins went to the hospital later that day and was diagnosed with a mild concussion.

Perkins testified that a few days after the attack, she was with her daughter when her daughter received several text messages from her stolen iPhone. Jones' counsel objected and argued that the Commonwealth could not authenticate the text messages because there was no evidence that Jones sent them. The Commonwealth countered that it was not claiming that Jones sent the text messages, but it was offering the text messages to establish that the phone was stolen because those messages were sent by someone other than Perkins. Jones' counsel persisted that the messages could not be admitted until they were authenticated and the trial court overruled the objection in the following exchange:

> [DEFENSE COUNSEL]: Judge, my argument is you can't admit [the text messages] until you have made a determination as to authentication. And I will point to – this is a relatively new Rule of Evidence, Rule 901(b)(11), governing authentication by identification of digital evidence.
>
> It states to connect digital evidence to a person or entity, there is two ways to do it; one, direct evidence, such testimony of a person with personal knowledge. So if someone can say I actually watched the defendant send this text message, that would be relevant; or through circumstantial evidence such as identifying content or proof of ownership, possession, control or access to the device during the relevant time corroborated by circumstances indicating ownership.
>
> [ADA]: Which, Your Honor, I would argue that I would be able to do that through these text messages. I haven't gotten there yet, but the witness would be able to testify that these were the texts

that she saw coming through to her daughter's phone via her iPad. I would argue that she would be able to establish the date being close in time to when this phone was stolen. And furthermore, she was able to testify that it was Ms. Jones who stole her phone.

THE COURT: So why is that not circumstantial evidence? Overruled. Go ahead.

*Id*. at 19-20.

After the trial court's ruling, Perkins testified that she saw her daughter receive the text messages that were being sent from iPhone. While she did not know who was sending the messages, Perkins noted that the messages referred to her in the third person.

At the end of trial, Jones was found guilty of the above-listed offenses and sentenced to serve nine months' probation. After the denial of her post-sentence motion, she filed this timely appeal.

On appeal, Jones contends that the trial court abuse its discretion in admitting the text messages from Perkins' phone because the Commonwealth did not properly authenticate them to establish that Jones was the sender.[2]

Pennsylvania Rule of Evidence 901 sets forth the standards for authenticating evidence. Rule 901 states, in relevant part, as follows:

**(a) In General.** Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent

---

[2] "Rulings on admissibility are committed to the common pleas court's discretion and will only be reversed on appeal where there is an abuse of discretion." ***Commonwealth v. Rogers***, 250 A.3d 1209, 1215 (Pa. Super. 2021) (citation omitted). "An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will." ***Id***.

must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

**(b) Examples.** The following are examples only--not a complete list--of evidence that satisfies the requirement:

* * *

(11) *Digital Evidence.* To connect digital evidence with a person or entity:

(A) direct evidence such as testimony of a person with personal knowledge; or

(B) circumstantial evidence such as:

(i) identifying content; or

(ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901.

"Digital evidence," as used in this rule, is intended to include a communication, statement, or image existing in an electronic medium.  This includes emails, text messages, social media postings, and images.  The rule illustrates the manner in which digital evidence may be attributed to the author.

The proponent of digital evidence is not required to prove that no one else could be the author.  Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author.  *See* Pa.R.E. 901(a).

Pa.R.E. 901, cmt.

Under Pennsylvania Rule of Evidence 901, text messages may be authenticated by:  (1) testimony from either the author or the sender; (2) circumstantial evidence, including "distinctive characteristics" like information specifying the author-sender or "reference to or correspondence with relevant events" preceding or following the message; or (3) "any other facts or aspects of the

message that signify it to be what its proponent claims." ***Commonwealth v. Koch***, ... 106 A.3d 705, 712-13 ([Pa.] 2014) (Castille, C.J., in support of affirmance); ***see Commonwealth v. Collins***, ... 957 A.2d 237, 265-66 ([Pa.] 2008). Further, "authentication generally entails a relatively low burden of proof; in the words of Rule 901 itself, simply 'evidence sufficient to support a finding that the item is what the proponent claims.' " ***Koch***, 106 A.3d at 713 (quoting Pa.R.E. 901(a)).

***Commonwealth v. Murray***, 174 A.3d 1147, 1156-57 (Pa. Super. 2017) (brackets omitted). "[A]uthentication social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity." ***Commonwealth v. Mangel***, 181 A.3d 1154, 1162 (Pa. Super. 2018) (citation omitted).

Jones first argues that the text messages should not have been admitted because the Commonwealth could not establish their authorship. Here, rather than trying to prove that a certain person authored the text messages, the Commonwealth sought merely to show that Perkins did not send the text messages from her iPhone that was stolen. Given this limited purpose, the Commonwealth needed only to adduce evidence sufficient to support that the text messages were what it claimed they were—namely, authored by someone other than Perkins, and not necessarily Jones. The Commonwealth did that by having Perkins testify to being with her daughter when her daughter began to receive message from her mother's stolen iPhone.

> [ADA]: So … are those the text messages from the iPad that you viewed?

[Victim]:  Yes, ma'am.

Q:  And how do you know those to be those text messages to your daughter?

A:  Because it's from my contact.

Q:  So is there something specific on your phone that identifies who your daughter is?

A:  Yeah, what I saved her number under.

Q:  Okay.  And what did you save your daughter's number in your phone as?

A:  Daughter with the emojis.

Q:  And the messages that are in your hand, do those have a specific name on the messages?

A:  Yes.

Q:  So that is, in fact, your daughter's phone that was receiving messages?

A:  Yes.

Q:  And were you receiving -- you can't say for certain who those messages were coming from?

A:  No.

N.T., 8/30/21, at 22-23.

Additionally, Perkins was asked about the content of the messages which referred to her in the third person, strongly implying that they were being sent by someone with her iPhone.

[ADA]:  And when you were viewing them on your iPad, they were coming from your phone?

[Victim]:  Yes.

Q: Now, was your name specifically mentioned in those text messages?

A: Yes.

Q: So do you refer to yourself as a third person while you text your daughter?

A: No.

*Id*. at 23.

After reviewing the text messages and given the limited purpose for which the Commonwealth offered the text messages, we find no abuse of discretion by the trial court in admitting those messages. Through the introduction of those messages, the Commonwealth only sought to show that someone other than Perkins (and not necessarily Jones) sent the text messages to bolster her claim that her iPhone was taken during the attack. First, the message was sufficiently authenticated by Perkins' testimony that she was with her daughter when her daughter received the text messages. *See* N.T. at 22-23. As a result, the Commonwealth offered direct authenticating testimony in which Perkins confirmed that she was not the sender of the text messages, which is all the Commonwealth sought to prove. *See Mangel*, 181 A.3d at 1162 (recognizing recipient or sender testimony as direct evidence of authenticity).

Second, the text messages themselves offer contextual clues that Perkins was not the author of the text messages that her daughter received from the stolen iPhone. Notably, the text messages from Perkins' iPhone

(which pictured below on the right-hand side) refer to Perkins by her first name Dazzae.



She been getting touch don't worry 😬

Your a special type of person

I will pray for you

Don't just Dazzae n her mom come fight me i ready called her job that bitch is getting fire n i don't think you want to be involved in this just stay out of it

Ray cool but Dazzae got to go that bitch is a dead bitch walking

Today · 8 PM

N.T. at 24 (Commonwealth's Exhibit 2).

This was sufficient direct and circumstantial authenticating evidence for the text messages to be admitted at trial to show that Perkins was not the sender of the text messages that were sent to her daughter.

Finally, Jones argues in the alternative that the text messages were irrelevant and prejudicial even if we find that they were properly authenticated. However, because Jones was tried by the trial court, we presume that the trial court, sitting as factfinder, ignored any potential

prejudicial evidence and objectively weighed all the evidence. **See Commonwealth v. Thomas**, 783 A.2d 328, 335 (Pa. Super. 2001) (reaffirming that "it has long been held that trial judges, sitting as factfinders, presumed to ignore prejudicial information in reaching a verdict" (citation omitted)). In any event, as it later explained, the trial court gave little weight to the text messages in finding Jones guilty. **See** Trial Court Opinion, 12/28/21, at 2. Accordingly, we find no relief due.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2022